## 61216. McMILLAN v. THE STATE.

Birdsong, Judge.

Appellant was indicted and convicted for voluntary manslaughter in the death of his wife.

The evidence is not in substantial dispute. Appellant and the deceased, Mercy Dean McMillan, had been married about six years. After two or three years of marriage, the couple began to bicker and fuss over matters which appellant contended were "small." Mrs. McMillan left on several occasions. After a day or so, however, she would return, and appellant would "try to do better." On New Year's Eve morning, Mrs. McMillan, as she had done before, called her sister, Mrs. Brown, to come get her. Mrs. Brown met the appellant as he was walking towards his house; she picked him up and they drove on together. When they arrived and appellant saw his wife packing to leave, he repeatedly asked her not to go. Finally, she removed some notes or pieces of paper from her car and went back to the carport door where appellant was standing; she placed these notes in his shirt pocket and said these notes would explain why she was leaving. When Mrs. McMillan called for the baby, appellant grabbed his wife and pulled her from the carport through the kitchen and into the hallway. Mrs. McMillan asked the appellant to turn her loose, but appellant kept repeating that he wanted to talk to her. Finally he said, "Okay, you can go but leave the baby here." Mrs. McMillan grabbed the baby. The baby was crying and his parents were tussling over him. Finally, at Mrs. Brown's entreaty, Mrs. McMillan let the baby go. Mrs. Brown turned to leave, and just before Mrs. McMillan turned to follow, she told her husband he would not have the baby anyway because she was going to get the sheriff to get her baby. Appellant said, "Oh no, the hell you won't." He suddenly reached out and picked up a high-powered hunting rifle. Both women turned to run. As Mrs. Brown reached the door, she heard a blast, and turned to see her sister fling up her hands. Appellant had shot his wife in the back through the heart.

His defense at trial was: "I saw the gun and I reached for it, and

when I turned around [Mrs. Brown] hollered and started running, and I turned around and just shot. . . . I didn't intend to shoot [my wife]. . . . I loved her. . . . I don't really remember actually pulling [the trigger]. I remember picking it up and turning around, that's all. . . . It just happened so fast I didn't realize what I was doing. After I turned around the gun shot and I saw her fall. And I realized that I shot her." During cross examination, appellant denied that he was "obsessed with a sudden, violent irresistible passion." He denied that he was upset because his wife was leaving and picked up the rifle and killed her, but said rather, "From the point that I picked the gun up — I didn't realize what I was doing by picking it up. I don't understand why I did it or anything."

Appellant was convicted of voluntary manslaughter and sentenced to serve 16 years. He appeals, urging error in the trial court's charge. *Held:*

We find no reversible error. The charge in this case was far from precise, but if it was error, as appellant contends, to explain "murder" for the jury's better understanding when the appellant was indicted only for voluntary manslaughter, it was harmless, since the jury did not find murder. *Truitt v. State,* 156 Ga. App. 156 (274 SE2d 42). The instruction that "the only thing you could find the defendant guilty of would be voluntary manslaughter because . . . he is not charged with murder" was surely unwise in view of the fact that the trial court later instructed the jury it could find involuntary manslaughter. Nevertheless, the trial court did not prejudice the appellant by that charge or by charging voluntary manslaughter twice, because the evidence in this case does not authorize a charge on involuntary manslaughter in the first place. We have plainly rejected the notion that when one intentionally fires a gun at another and kills her, his contention that he did not aim at the victim and did not intend to kill, or to shoot her, makes the killing involuntary manslaughter. *Chappell v. State,* 134 Ga. App. 375 (214 SE2d 392); *Washington v. State,* 126 Ga. App. 396, 397 (190 SE2d 821). Compare *Truitt,* supra. Likewise, the defendant's contention that he did not appreciate what he was doing and does not remember doing it does not expiate the act because the evidence shows he intentionally fired the gun at or towards his wife. See especially *Washington,* supra, and see *Addison v. State,* 124 Ga. App. 467, 468 (2) (184 SE2d 186), where the defendant had no memory of the act at all. The shooting in this case was either a felonious assault upon the deceased (Code Ann. §§ 26-1101 (b) and 26-1302), or it was voluntary manslaughter. Code Ann. § 26-1102. The jury had no opportunity to decide whether the appellant committed murder (Code Ann. § 26-1101 (b) supra), and the defendant was not entitled to a charge of

involuntary manslaughter. *Jackson v. State,* 234 Ga. 549, 551 (216 SE2d 834); and see *Dean v. State,* 245 Ga. 503, 505 (265 SE2d 805); *Chappell,* supra; *Washington,* supra; *Addison,* supra. Under the circumstances the conviction for voluntary manslaughter was authorized and the appellant has no grounds to complain.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 27, 1981.

*Hinton R. Pierce,* for appellant.

*Richard E. Allen, District Attorney, Steven L. Beard, Assistant District Attorney,* for appellee.